**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COTY CASTELLANOS, <br><br> Plaintiff, <br><br> vs. <br><br> DEL TACO RESTAURANTS, INC., LAWRENCE F. LEVY, EILEEN APTMAN, JOHN D. CAPPASOLA, JR., ARI B. LEVY, R.J. MELMAN, JOSEPH STEIN, and VALERIE L. INSIGNARES. <br><br> Defendants. | Case No.: <br><br> **Complaint For:** <br><br> (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 <br> (2) Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Coty Castellanos ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Del Taco Restaurants, Inc. ("Del Taco" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Jack in the Box Inc. ("Parent") through merger vehicle Epic Merger Sub, Inc. ("Merger Sub") (collectively with "Parent", "Jack in the Box") as a result

- 1 -
COMPLAINT

of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction valued at approximately $575 million (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a December 7, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Jack in the Box will acquire all of the remaining outstanding shares of Del Taco's common stock at a price of $12.51 per share in cash. As a result, Del Taco will become an indirect wholly-owned subsidiary of Jack in the Box.

3. Thereafter, on January 4, 2022, Del Taco filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the Preliminary Proxy Statement indicates that no independent committee composed of disinterested Directors was created to run the sales process.

5. Additionally, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on January 4, 2022 with the SEC in an effort to solicit Plaintiff to vote his Del Taco shares in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections


for Del Taco, provided by the Company to the Company's financial advisor Piper Sandler & Co. ("Piper Sandler"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Piper Sandler and provided to the Board.

7. Accordingly, this action seeks to enjoin the Proposed Transaction.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

9. Plaintiff is a citizen of Nevada and, at all times relevant hereto, has been a Del Taco stockholder.

10. Defendant Del Taco is the nation's second largest Mexican Quick Service restaurant chain by number of restaurants. Del Taco is incorporated under the laws of the State of Delaware and has its principal place of business at 25521 Commercentre Drive, Lake Forest, California 92630. Shares of Del Taco common stock are traded on the Nasdaq Exchange under the symbol "TACO."

11. Defendant Lawrence F. Levy ("L. Levy") has been a Director of the Company at all relevant times. In addition, L. Levy serves as the Chairman of the Company's Board of Directors.

12. Defendant John D. Cappasola, Jr. ("Cappasola") has been a director of the Company at all relevant times and has been serving as President and Chief Executive Officer ("CEO") since July 2017.

13. Defendant Eileen Aptman ("Aptman") has been a director of the Company at all relevant times.

14. Defendant Ari B. Levy ("A. Levy") has been a director of the Company at all relevant times.

15. Defendant R.J. Melman ("Melman") has been a director of the Company at all relevant times.

16. Defendant Joseph Stein ("Stein") has been a director of the Company at all relevant times.

17. Defendant Valerie L. Insignares ("Insignares") has been a director of the Company at all relevant times.

18. Defendants identified in ¶¶ 11 - 17 are collectively referred to as the "Individual Defendants."

19. Non-Party Jack in the Box is a major quick service food restaurant chain with locations throughout the United States and its shares are traded on the Nasdaq Stock Exchange under the symbol "JACK."

20. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Del Taco maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

24. Del Taco Restaurants, Inc. develops, franchises, owns, and operates Del Taco quick-service Mexican-American restaurants in the United States. The Company's restaurants offer Mexican inspired and American classic dishes. As of August 31, 2021, it operated approximately 600 restaurants across 16 states. The Company was founded in 1964 and is headquartered in Lake Forest, California.

25. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the October 14, 2021 press release announcing its 2021 Q3 financial results, the Company highlighted such milestones as Total revenue of $124.3 million, representing 2.9% growth from the fiscal third quarter 2020 and company-operated restaurant sales of $112.0 million, representing 2.2% growth from the fiscal third quarter 2020.

26. Speaking on these positive results, CEO Defendant Cappasola commented on the Company's positive financial results as follows, "'We have made significant progress in signing new franchise development agreements, having signed a total of seven so far this year, including four since July, for a total of 53 new future Del Taco restaurant commitments across six states from coast to coast. Accelerating franchise development with experienced operators looking to diversify their portfolios through our unique QSR+ positioning is a critical part of our growth and these new agreements further support our stated goal of 5% system-wide new unit growth led by franchising beginning in 2023.'"

27. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Del Taco. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

28.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Del Taco to enter into the Proposed Transaction without providing requisite information to Del Taco stockholders such as Plaintiff.

**The Flawed Sales Process**

29.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30.     Notably, the Preliminary Proxy Statement fails to indicate if an independent committee composed of disinterested Directors was created to run the sales process. If such a committee was not created the Preliminary Proxy Statement should provide the Board's reasoning for such decision. Conversely, if such a committee did exist the Preliminary Proxy Statement should provide adequate information regarding the purview, powers, and membership of that committee.

31.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Jack in the Box, whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

- 6 -
COMPLAINT

***The Proposed Transaction***

33.     On November 4, 2021, Del Taco and Jack in the Box issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> SAN DIEGO & LAKE FOREST, Calif.--(BUSINESS WIRE)-- Jack in the Box Inc. (NASDAQ: JACK), one of the nation's leading QSR chains, and Del Taco Restaurants, Inc. (NASDAQ: TACO), the nation's second largest Mexican QSR chain by number of restaurants, today announced that the companies have entered into a definitive agreement pursuant to which Jack in the Box will acquire Del Taco for $12.51 per share in cash in a transaction valued at approximately $575 million, including existing debt. While this price per share offers an attractive premium to Del Taco shareholders, Jack in the Box estimates that the transaction values Del Taco at a synergy adjusted multiple of approximately 7.6x trailing twelve months Adjusted EBITDA.
>
> Founded in 1964, Del Taco serves more than three million guests each week at its approximately 600 restaurants across 16 states. 99% of Del Taco restaurants feature a drive-thru, helping to achieve strong off-premise sales and a diversified daypart mix. Jack in the Box and Del Taco will have more than 2,800 restaurants spanning 25 states with similar guest profiles, menu offerings and company cultures – both priding themselves on serving guests with unique variety, quality, innovation and value. Together, the companies will create a stronger QSR player with greater scale and the ability to enhance the guest experience while pursuing profitable growth.
>
> "We are thrilled to welcome Del Taco, a beloved brand and proven regional winner, to the Jack in the Box family," said Darin Harris, CEO of Jack in the Box. "This is a natural combination of two like-minded, challenger brands with outstanding growth opportunities. Together, Jack in the Box and Del Taco will benefit from a stronger financial model, gaining greater scale to invest in digital and technology capabilities, and unit growth for both brands. This acquisition fits squarely in our strategic pillars and helps us create new opportunities for the franchisees, team members and guests of both brands."
>
> Mr. Harris continued, "Del Taco has a loyal, passionate guest base and a strong operating model, and we believe that we can leverage our infrastructure, experience refranchising, and development strategy to support Del Taco's growth plans and expand Del Taco's footprint. We can't wait to welcome the Del Taco team members and franchisees to the Jack family!"
>
> David Beshay, a Jack in the Box franchisee and operator of 210+ restaurants, added, "I couldn't be happier about the opportunity that this transaction offers to the franchisees of these two amazing brands. I believe the Del Taco brand will fit hand in glove with ours, and further enhance the strong franchise and guest-focused culture we have worked so hard to develop at Jack in the Box. We are excited about

the potential to open Del Taco restaurants, helping the company expand these two beloved brands."

John D. Cappasola, Jr., President and CEO of Del Taco, said, "We are excited to have found a partner in Jack in the Box that shares our vision for the future and has the QSR expertise to further accelerate Del Taco's growth. In recent years, we have uniquely positioned Del Taco as a leader in the growing Mexican QSR category, expanded our digital capabilities to enhance consumer convenience and focused on growing the brand through franchising, resulting in eight consecutive years of franchise same store sales growth and an accelerating new unit pipeline."

Mr. Cappasola, Jr. continued, "We expect this transaction will provide Del Taco with the scale, complementary capabilities and opportunity to become even stronger partners to our franchisees and support their ability to drive substantial growth in our core and emerging markets. On behalf of Del Taco Restaurants, Inc. Board of Directors, we're confident the agreement delivers immediate value to Del Taco shareholders and will greatly benefit our brand, team members, franchisees and loyal guests for many years to come."

Brent Veach, a Del Taco franchisee and operator of 50+ restaurants, shared, "Del Taco and Jack in the Box are two iconic brands that both represent a tremendous business opportunity for existing and new franchisees. I am excited how this new larger organization can provide operating cost synergies and further accelerate franchise growth through enhanced support, additional resources and shared real estate knowledge. We are excited to join the Jack in the Box family and assist in growing both amazing brands."

*Compelling Strategic and Financial Benefits*

The transaction is expected to:

Deliver Immediate Earnings Accretion with Significant Upside. Jack in the Box expects the transaction to be mid-single-digit accretive to earnings per share excluding transaction expenses in year one and meaningfully accretive beginning in year two once full synergizes are realized.

Create a Stronger QSR Player with Enhanced Scale. This transaction combines two challenger brands with complementary geographic footprints, guest profiles and menu offerings to create a scaled QSR player with a stronger financial model to drive growth and enhanced profitability. Jack in the Box and Del Taco will also benefit from sharing best practices and the opportunity to strengthen guest loyalty and reach new guests. As a combined QSR player, Jack in the Box and Del Taco plan to expand their footprint and continue to drive innovation at both brands to create more unique, innovative menus and exceptional guest experiences.

True QSR in the Expanding Mexican Category with a Track Record of Consistent Growth. The transaction allows Jack in the Box to tap into the growing and attractive Mexican QSR category, where Del Taco has been a leading brand with a track record of consistent performance. By leveraging the combined scale of the companies, we will be able to effectively target secular demographic trends underpinning the category.

Reinforce Unit Growth Plans for Both Brands. By leveraging Jack in the Box and Del Taco's unique strengths and their shared approach to building out markets, Jack in the Box will be able to support growth plans for both brands. Jack in the Box will benefit from Del Taco's strong operations, construction, and development expertise to drive more efficient expansion supporting its long-term objective of 4% annual unit growth by 2025. By leveraging Jack in the Box's broader footprint, re-franchising experience, and digital capabilities, the combined company expects to drive energized growth at both brands in existing and new markets.

Create Substantial Opportunities for Franchisee Expansion and Unit Level Economics. The transaction brings together two exceptional franchisee bases and creates an enhanced platform for franchisee expansion and growth by leveraging the combined company's scale, technology and digital capabilities. Both brands' franchisees will benefit from economies of scale in supply chain and more diverse opportunities to expand their businesses and drive enhanced profitability. The transaction will enable both brands to provide stronger support to franchisees with a broader set of resources to help them optimize and grow their businesses.

Build a Stronger, More Flexible Financial Model. The transaction will create a stronger combined organization, with increased size and scale, and the financial resources to pursue a wider set of opportunities for profitable growth. Jack in the Box expects that the combined organization will also benefit from a more efficient capital structure. Jack in the Box expects to maintain a leverage ratio within its target range of 4.0x to 5.5x total debt to Adjusted EBITDA and an investment grade credit rating.

Drive Meaningful Synergies. Jack in the Box expects the combined company to realize run-rate strategic and cost synergies of approximately $15 million by the end of fiscal year 2023, with approximately half of the synergies achieved in the first year. Jack in the Box expects to achieve these synergies largely through procurement and supply chain savings, technology and digital efficiencies and other financial benefits, as well as knowledge-sharing initiatives.

*Financing and Path to Completion*

Jack in the Box intends to finance the acquisition through the issuance of additional securitization notes from its existing program with a financing commitment provided by BofA Securities, Inc.

The transaction is expected to close in the first calendar quarter of 2022 and is subject to customary closing conditions, including receipt of Del Taco shareholder approval and regulatory approvals.

***Potential Conflicts of Interest***

34. The breakdown of the benefits of the deal indicates that Del Taco insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Del Taco.

35. Notably, Company insiders, currently own large, illiquid portions of Company stock, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, despite providing the following information, the Preliminary Proxy Statement fails to provide an accounting of how much cash consideration these holdings will amount to for the Company Insiders, including the Individual Defendants.

| Name and Address of Beneficial Owner | Shares Beneficially Owned | Percentage of Common Stock Owned[1] |
|---|---|---|
| Dimensional Fund Advisors L.P.[2] | 2,426,892 | 6.6% |
| Belfer Investment Partners L.P.[3] | 3,535,099 | 9.6% |
| BlackRock Inc.[4] | 2,060,580 | 5.6% |
| Versor Investments LP[5] | 1,839,552 | 5.1% |
| The Vanguard Group[6] | 1,870,697 | 5.1% |
| Ari B. Levy[7] | 2,047,855 | 5.6% |
| Chad Gretzema[8] | 175,851 | 0.5% |
| Eileen Aptman[3] | 1,366,508 | 3.7% |
| John D. Cappasola, Jr.[9] | 562,091 | 1.5% |
| Joseph Stein[10] | 41,823 | 0.1% |
| Karen Luey[11] | 6,484 | * |
| Lawrence F. Levy[12] | 1,473,835 | 4.0% |
| R.J. Melman[13] | 72,039 | 0.2% |
| Steven L. Brake[14] | 348,989 | 0.9% |
| Valerie L. Insignares[15] | 12,389 | * |
| All directors and executive officers as a group (10 persons) | 5,022,195 | 13.6% |

36. Additionally, upon the consummation of the Proposed Transaction, all company options, restricted stock units, and other equity awards, will be exchange exchanged for the merger consideration. This will result in disparate consideration being paid to Company insiders compared to Plaintiff and other public Company stockholders. Despite this, the Preliminary Proxy Statement fails to provide an accounting of these holdings or of the consideration that will be paid out in exchange for them upon the consummation of the Proposed Transaction.

37. In addition, certain employment agreements with certain Del Taco executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash($)[1] | Equity($)[2] | Perquisites/Benefits($)[3] | Total($)[4] |
|---|---|---|---|---|
| John D. Cappasola, Jr. | 677,813 | 3,665,425 | 20,797 | 4,364,035 |
| Steven L. Brake | 424,657 | 1,385,575 | 20,797 | 1,831,029 |
| Chad Gretzema | 353,188 | 1,254,854 | 15,005 | 1,623,047 |

38. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. Thus, while the Proposed Transaction is not in the best interests of Del Taco, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

40. On January 4, 2022, the Del Taco Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

41. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

    a. Adequate information regarding if an independent committee of disinterested Directors was created to run the sales process, including;

        i. If no special committee was created, adequate information regarding the reasoning underlying that decision;

        ii. If a special committee was created, adequate information regarding its purview, membership, and powers;

    b. Whether the confidentiality agreements entered into by the Company with Jack in the Box differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

    c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Jack in the Box, would fall away; and

        d. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

<u>Omissions and/or Material Misrepresentations Concerning Del Taco's Financial Projections</u>

42. The Preliminary Proxy Statement fails to provide material information concerning financial projections for Del Taco provided by Del taco management and relied upon by Piper Sandler in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

43. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Piper Sandler reviewed, "Reviewed and analyzed certain information furnished to Piper by Company management relating to the business, earnings, cash flow, assets, liabilities and prospects of the Company, including the Company Projections provided by Company management."

44. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Del Taco management provided to the Board and Piper Sandler. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

45. With regard to the *FY 2021E to FY 2026E Company Projections* set prepared by Del Taco Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

  a. Adjusted Restaurant Operating Expenses, including all underlying necessary inputs and assumptions, including specifically: food and paper costs, labor and related expenses, occupancy and other operating expenses;

46. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Piper Sandler's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Piper Sandler*

48. In the Preliminary Proxy Statement, Piper Sandler describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions:

49. With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

  a. The specific metrics for each selected company analyzed;

  b. The specific inputs and assumptions used to determine the following multiple reference ranges:

       i. Implied Multiple Reference Range of EV / CY 2022E EBITDA of 6.4x – 12.1x;

       ii. Implied Multiple Reference Range of EV / CY 2021E EBITDA of 5.3x – 9.7x;

       iii. Implied Equity Value per Share Reference Range of EV / CY 2022E EBITDA of $6.22 – $14.00; and

       iv. Implied Equity Value per Share Reference Range of EV / CY 2021E EBITDA of $5.47 – $12.04.

50. With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific metrics for each precedent transaction analyzed;

    b. The date on which each precedent transaction closed;

    c. The aggregate value of each precedent transaction;

    d. The specific inputs and assumptions used to determine the utilized implied multiple reference range of EV/LTM EBITDA of 5.3x – 20.9x; and

    e. The specific inputs and assumptions used to determine the utilized implied equity value per share reference range of EV/LTM EBITDA $4.73 - $25.97.

51. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific utilized projected unlevered free cash flows from fiscal year 2022 to fiscal year 2026, discounted back to December 28, 2021 (the end of the Company's fiscal year 2021), and all underlying inputs and assumptions used to calculate it;

    b. The specific utilized terminal value at fiscal year 2026 based upon EBITDA exit multiples, discounted back to December 28, 2021, and all underlying inputs and assumptions used to calculate it;

    c. The specific inputs and assumptions used to determine the utilized 29.0% tax rate;

    d. All specific inputs and assumptions used to determine the selected range of EBITDA exit multiples of 7.4x to 9.4x;

    e. The specific inputs and assumptions used to determine the utilized discount ate range of 9.3% to 14.3%; and

    f. The Company's weighted average cost of capital utilized.

52. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

53. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Del Taco stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

54. Plaintiff repeats all previous allegations as if set forth in full herein.

55. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

56. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

    It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC]

may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

57. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

58. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

59. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

60. The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

61. The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such

misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

62. Plaintiff repeats all previous allegations as if set forth in full herein.

63. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

64. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

65. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Del Taco's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being

- 18 -
COMPLAINT

concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

66. The Individual Defendants acted as controlling persons of Del Taco within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Del Taco to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Del Taco and all of its employees. As alleged above, Del Taco is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 10, 2022

**BRODSKY & SMITH**

By: _____
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

- 20 -
COMPLAINT